DARALYN J. DURIE (CA SBN 169825)
DDurie@mofo.com
JOYCE LIOU (CA SBN 277720)
JLiou@mofo.com
JACK W. HAISMAN (CA SBN 346100)
JHaisman@mofo.com
HOLLY M. PETERSEN (CA SBN 351588)
HollyPetersen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

SYDNEY COOPER (*pro hac vice*)
scooper@mofo.com
Morrison & Foerster LLP
2100 L Street NW, Suite 900
Washington, DC 20037-1679
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

Attorneys for Plaintiff
ANTHROPIC, PBC

JOHN M. KIM (CA SBN 188997)
jkim@ipla.com
PHILLIP L. KIM (CA SBN 315589)
pkim@ipla.com
ZAYDE J. KHALIL (CA SBN 323547)
zkhalil@ipla.com
JOSEPH T. CHENG (CA SBN 334417)
jcheng@ipla.com
IPLA, LLP
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
Telephone: (858) 272-0220
Facsimile: (858) 272-0221

Attorneys for Defendant
ABNORMAL AI, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ANTHROPIC, PBC,

Plaintiff,

v.

ABNORMAL AI, INC. (f/k/a ABNORMAL SECURITY CORPORATION),

Defendant.

Case No. 3:26-cv-06754-VC

**JOINT CASE MANAGEMENT STATEMENT**

Date: October 30, 2026
Time: 10:00 a.m.
Courtroom: Videoconference
Judge: Hon. Vince Chhabria

Pursuant to Civil L.R. 16-9, the *Standing Order for All Judges of the Northern District of California*, and the *Standing Order for Civil Cases before Judge Vince Chhabria*, the parties to the above-entitled action hereby submit this Joint Case Management Statement:

The parties to this Joint Case Management Statement are Anthropic, PBC ("Plaintiff" or "Anthropic"), and Abnormal AI, Inc. (f/k/a Abnormal Security Corporation) ("Defendant" or "Abnormal").

**I. Jurisdiction and Service**

This Court has subject matter jurisdiction because this action arises under the Lanham Act, 15 U.S.C. §§ 1051-1141, and jurisdiction is proper in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). Jurisdiction for the California statutory and common law claims is proper in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Abnormal does not contest venue or personal jurisdiction. No named parties remain to be served.

**II. Facts**

1. Anthropic's Statement of the Facts: Anthropic is a San Francisco-based public benefit corporation and artificial intelligence company that develops and offers Claude, a family of AI frontier models and related software. From its founding in 2021, Anthropic has built its reputation through foundational AI safety and security research, with cybersecurity a core focus of Anthropic's public-facing research and educational services and product offerings since at least 2023. Anthropic's cybersecurity endeavors have included its establishment of a security framework for frontier AI models; its participation in industry bodies, government partnerships, and pre-deployment testing agreements designed to develop applications to combat cyber threats; and its attendance at prominent cybersecurity conferences, such as DEF CON 2024 and Black Hat 2024, where Anthropic demonstrated its AI models' cybersecurity capabilities to enterprise cybersecurity audiences. The use of AI models for cybersecurity has been well documented by Anthropic, including in a March 2025 report published on Anthropic's website, which preceded Anthropic's formal introduction of a dedicated AI cybersecurity product called

Claude Security. In 2026, Anthropic launched Project Glasswing, a defensive-cybersecurity initiative that brings together leading tech and cybersecurity companies who are currently using Anthropic's AI models to identify and remediate cybersecurity vulnerabilities at scale.

Anthropic owns trademark rights under the Lanham Act and California common law in its symbol consisting of a geometric letterform with an integrated descending slash (the "Anthropic Symbol"), which it has used since at least as early as May 28, 2021, and in the animated motion sequences in which its logo contracts into the Anthropic Symbol or expands from it (the "Anthropic Motions" and, collectively, the "Anthropic Marks"), which it has used since at least as early as March 10, 2023. Anthropic owns multiple pending U.S. trademark applications to register the Anthropic Symbol (*see* Serial Nos. 99/483,730, 99/483,731, 99/483,732, and 99/483,735) and the Anthropic Motions (*see* Serial Nos. 99/897,630 and 99/897,637).

Defendant Abnormal is an enterprise cybersecurity company that offers AI-powered cybersecurity software. Abnormal has been a paying Anthropic customer since at least January 3, 2025 and Abnormal's platform uses Anthropic's Claude software. On March 12, 2025, Abnormal filed U.S. Trademark Application Serial No. 99/080,304 (the "'304 Application") for a new logo, which it began using in April 2025, together with animated sequences (collectively, the "Abnormal Marks"), following its rebrand from "Abnormal Security" to "Abnormal AI."

Abnormal's new logo adds a parallel line to Abnormal's prior letterform logo and is confusingly similar to the Anthropic Symbol, and the animated sequences replicate the Anthropic Motions. Abnormal uses the Abnormal Marks, without Anthropic's consent or authorization, to advertise and provide AI-powered software and services to enterprise customers, including at https://abnormal.ai and at industry conferences; the parties' offerings are related and are marketed to overlapping customers through overlapping channels; and Abnormal's cybersecurity offerings are within the natural zone of expansion of Anthropic's business, given its preexisting cybersecurity research and own offerings such as Claude Security and Project Glasswing. Abnormal's marks have led to actual instances of confusion, including public comments on Abnormal's April 16, 2025 LinkedIn rebrand announcement asking whether

the new logo looked like Anthropic's. Abnormal adopted its marks with knowledge of Anthropic's rights and declined Anthropic's requests, and beginning in August 2025, it changed its logo. Anthropic opposed the '304 Application before the USPTO's Trademark Trial and Appeal Board ("TTAB") on November 21, 2025 (Opposition No. 91303262), and the USPTO has suspended Plaintiff's Anthropic Symbol applications based on a citation of the '304 Application.

Abnormal's use of the Abnormal Marks presents a substantial likelihood of consumer confusion, mistake, or deception with the Anthropic Marks. Anthropic asserts claims for trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), unfair competition under California Business and Professions Code §§ 17200 et seq., and California common law trademark infringement.

<u>Defendant's Statement of the Facts</u>: Abnormal is a cybersecurity company that began operating under the ABNORMAL AI name in 2017 and adopted the ABNORMAL SECURITY name in 2018. Abnormal provides software and services designed to detect and prevent cyberattacks. Its core software platform autonomously analyzes employee behavior, communications, and activity to identify suspicious patterns and potential threats. Abnormal's principal offerings focus on email security, including protection against phishing, business email compromise, fraud, and other sophisticated email attacks.

Abnormal has used its stylized letter "A" mark in connection with its cybersecurity software and services since at least October 4, 2021. Abnormal owns US Trademark Registration No. 8137564 for the mark, based on an application filed September 29, 2021. On March 12, 2025, Abnormal filed a US trademark application for its mark and began using that mark in April 2025. In April 2025, Abnormal announced that it was returning to the ABNORMAL AI name and adopted the mark as part of that rebrand. Abnormal's current logo was developed from its preexisting mark.

Abnormal's trademark rights in its mark predate the cybersecurity activities alleged by Anthropic in the Complaint. Abnormal also filed its US trademark application for its mark and began using that mark before Anthropic filed its US trademark applications for the Anthropic

Symbol and Anthropic Motions and before Anthropic offered any dedicated cybersecurity product or service under those marks.

Anthropic only recently began offering dedicated cybersecurity software, and the Complaint does not identify any earlier offerings of commercially offered standalone cybersecurity software. While Anthropic alleges that it engaged in cybersecurity activities before it launched its cybersecurity product, Abnormal disputes that these activities established trademark use under the Anthropic Symbol or Anthropic Motions sufficient to confer priority for the specialized commercial cybersecurity software and services offered by Abnormal. Anthropic's alleged cybersecurity activities before launching its dedicated cybersecurity offerings were largely focused on research, industry initiatives, conferences, and partnerships, rather than the provision of dedicated commercial cybersecurity software and services. Abnormal therefore disputes that these activities establish superior trademark rights extending to Abnormal's cybersecurity offerings.

Abnormal also disputes Anthropic's allegation that cybersecurity falls within its natural zone of expansion. Anthropic's prior research, industry initiatives, conferences, and partnerships do not, merely by virtue of their connection to cybersecurity, establish that dedicated enterprise cybersecurity software and services were a natural extension of Anthropic's existing business at the relevant time. Abnormal strongly disputes that Anthropic's involvement in artificial intelligence activities automatically extends its asserted trademark rights to every industry in which AI technology may be used.

Abnormal also disputes Anthropic's allegations of actual confusion and bad faith in adopting its challenged marks. The social media comments identified by Anthropic merely compare the appearance of the parties' logos and do not establish consumer confusion regarding the source or affiliation of their respective goods and services. Abnormal's use of Anthropic's Claude software likewise does not establish that Abnormal adopted its current logo or challenged motion sequences with knowledge of Anthropic's asserted trademark rights in connection with the goods and services at issue or an intent to trade on Anthropic's goodwill.

Anthropic's asserted rights are limited by the nature of the Anthropic Symbol itself. The A\ Anthropic Symbol depicts the stylized letters "AI," the commonly understood abbreviation for "artificial intelligence" and a direct reference to the industry in which Anthropic operates and the products and services it provides. The letters "AI," including in stylized form, are also commonly used by numerous companies operating in the artificial intelligence industry.

Anthropic's own use further confirms the descriptive and/or generic "AI" connotation of the A\ Anthropic Symbol. As alleged in the Complaint, the Anthropic Motions animate between Anthropic's ANTHROP\C stylized mark and the A\ mark, with the letter "A" and the descending diagonal line from the ANTHROP\C stylized mark forming A\. Anthropic also owns four US trademark registrations for its ANTHROP\C stylized mark in which it affirmatively represented to the USPTO that the diagonal line element represented the letter "I."

Based on Anthropic's own marketplace use and representations to the USPTO, Abnormal contends that the Anthropic Symbol comprises the stylized letters "AI," and that the letters "AI" are generic in connection with artificial intelligence products and services. Abnormal therefore disputes the scope of protection claimed by Anthropic and maintains that any protectable rights in the Anthropic Symbol are limited to its particular stylization.

Abnormal further disputes that the parties' marks are confusingly similar in appearance or commercial impression, or that their respective goods and services are sufficiently related to create a likelihood of confusion. Anthropic is not entitled to the relief sought in the Complaint. Abnormal therefore requests dismissal of Anthropic's claims.

## III. Legal Issues

The following legal issues are disputed by the parties:

- Whether Abnormal's use of the Abnormal Marks causes a likelihood of confusion, mistake, or deception with Plaintiff's Anthropic Marks as to the source, association, or sponsorship of Anthropic's or Abnormal's goods and services, and constitutes trademark infringement, unfair competition, and/or false designation of origin under federal, state, and common law, including 15 U.S.C. § 1125(a) and California Business and Professions Code §§ 17200 et seq., under the

factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979);

- Whether Anthropic owns valid and protectable trademark rights in the Anthropic Symbol and the Anthropic Motions;
- Whether the Anthropic Symbol conveys or represents the letters "AI."
- Whether Anthropic's asserted trademark rights extend to goods or services sufficiently related to Abnormal's commercial cybersecurity software and services to support a likelihood of confusion;
- Whether Anthropic's representations concerning the nature and meaning of its asserted marks before the USPTO, its marketplace use of those marks, and its positions in this Action support Abnormal's defense of unclean hands;
- Whether Abnormal's specialized enterprise cybersecurity software and services fall within Anthropic's natural zone of expansion based on Anthropic's asserted prior trademark use at the time Abnormal adopted the Abnormal Mark;
- Whether Anthropic has priority of use and, if so, the extent and scope of such rights;
- Whether Anthropic is entitled to injunctive relief against Abnormal's use of the Abnormal Marks;
- Whether Anthropic is entitled to monetary relief against Abnormal, including Abnormal's profits, Anthropic's actual damages (including corrective advertising damages), Anthropic's costs, enhanced damages under 15 U.S.C. § 1117(a), and, if so, the amount of such relief;
- Whether Abnormal acted willfully or in bad faith;
- Whether either party is entitled to attorneys' fees and costs.

## IV. Motions

There are no pending motions. The parties anticipate moving for a protective order governing the disclosure of confidential information and an order detailing the production protocol for ESI. The parties will endeavor to stipulate and agree to those orders to the extent

possible prior to filing. Anthropic also anticipates moving for issuance of a Hague Convention letter of request for documents and testimony from Shaped By, the design agency that Abnormal used for its April 2025 rebrand and that Anthropic understands is based in the United Kingdom, as described in Section VIII. Abnormal reserves its position on the necessity and scope of any such request pending review of Anthropic's proposed letter of request and supporting materials. The parties anticipate filing motions for summary judgment, in whole or in part, at a later date.

**V. Amendment of Pleadings**

The parties do not intend to seek leave to amend their pleadings at this time.

**VI. Evidence Preservation**

Counsel for the parties confirm they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**VII. Disclosures**

Anthropic served its initial disclosures on September 29, 2026. Abnormal served its initial disclosures on October 13, 2026. The parties' respective initial disclosures include the names of individuals likely to have discoverable information and categories of documents, data, and tangible things in the disclosing party's possession, custody or control that it may use to support its claims and defenses in this action, to the extent required under Rule 26.

**VIII. Discovery**

The parties held their Rule 26(f) conference on September 29, 2026. On the same day, both parties served initial sets of interrogatories and requests for production, and Abnormal also served its first set of requests for admission.

The parties  propose that the ten-deposition limit set forth in Rule 30 of the Federal Rules of Civil Procedure be modified to exclude expert depositions.  . The parties do not propose any other limitations or modifications of the discovery rules at this time.

The parties intend to enter into a stipulated e-discovery order and have met and conferred regarding a proposed discovery plan around the parties' respective claims.

Anthropic's Position: Anthropic anticipates conducting discovery on at least the following topics: the nature of Abnormal's business and the goods and services offered under the Abnormal Marks; Abnormal's selection, design, clearance, and adoption of the Abnormal Marks, including the April 2025 rebrand; Abnormal's knowledge of the Anthropic Marks and its use of Anthropic's products; Abnormal's actual and target customers, channels of trade, conference participation, and advertising and promotion of the Abnormal Marks; Abnormal's use of the Abnormal Sequences; instances of actual confusion; Abnormal's sales and revenues; and the facts underlying Abnormal's affirmative defenses.

Abnormal's Position: Abnormal anticipates conducting discovery on at least the following topics: Anthropic's adoption, use, and claimed priority in the Anthropic Symbol and Anthropic Motions; the nature, scope, and timing of Anthropic's cybersecurity activities, products, and services, including Anthropic's claimed natural zone of expansion into dedicated commercial cybersecurity products and services; Anthropic's use of the Anthropic Symbol and Anthropic Motions in connection with its alleged cybersecurity activities; the meaning, strength, distinctiveness, and scope of protection of Anthropic's asserted marks, including third-party use of similar "AI" and "A"-formative marks; Anthropic's representations to the USPTO concerning the nature and composition of its asserted marks; the parties' respective goods and services, customers, channels of trade, marketing, advertising, pricing, and competitive relationship; any actual or alleged consumer confusion and the absence thereof; Anthropic's trademark enforcement activities concerning its asserted marks, including any coexistence or settlement agreements; Anthropic's alleged damages and entitlement to injunctive or other relief, and the factual basis for Anthropic's claims.

Foreign Third-Party Discovery: Anthropic anticipates seeking documents and testimony from Shaped By, the design agency utilized by Abnormal and located in the United Kingdom, through a letter of request under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. If a modification of the case schedule is necessary to allow for completion of the process under the Hague Convention, the parties will meet-and-confer and promptly seek relief from the Court for any requested continuance of case deadlines. Abnormal

reserves its right to object to the scope, relevance, proportionality, and necessity of the proposed foreign discovery, as well as any requested modification of the case schedule.

**IX. Class Actions**

Not applicable.

**X. Related Cases**

The only related case currently pending before another court or administrative body is Opposition No. 91303262 before the USPTO's Trademark Trial and Appeal Board, filed by Anthropic on November 21, 2025 against Abnormal's U.S. Trademark Application Serial No. 99/080,304 and suspended on August 3, 2026 pending final determination of the present civil action. Anthropic also has ongoing opposition proceedings against Abnormal AI's applications for the Abnormal A logo in Mexico (App No. 3490092), European Union (App No. 1880120; Proceeding No. 003256691), United Kingdom (App No. WO0000001880120; Proceeding No. OP000459637), and Brazil (App No. 501880120).

**XI. Relief**

Anthropic's Position: Anthropic seeks an order from the Court permanently enjoining Abnormal's use of the Abnormal Marks, or any other mark that is confusingly similar to Anthropic's Anthropic Marks, as well as an order directing Abnormal to deliver up or destroy any materials bearing these marks. In addition, Anthropic seeks Abnormal's profits, Anthropic's actual damages (including corrective advertising damages), restitution and disgorgement under California Business and Professions Code §§ 17200 et seq., enhanced damages, costs, attorneys' fees, and such other relief as deemed appropriate by this Court. Anthropic has not yet quantified its monetary relief, which will depend on discovery and expert analysis. Abnormal's profits will be calculated under 15 U.S.C. § 1117(a), under which Anthropic must prove Abnormal's sales and Abnormal must prove any claimed costs or deductions, and Anthropic's actual damages will be based on the harm caused by the alleged infringement, including the reasonable cost of corrective advertising.

Defendant's Position: Abnormal denies liability, and denies that Anthropic is entitled to any injunctive or monetary relief.

**XII. Settlement and ADR**

The parties engaged in settlement discussions in connection with the TTAB proceeding before this action was filed and discussed settlement again at their Rule 26(f) conference, but have not yet agreed to a preferred ADR process. Anthropic has proposed a mediation or a settlement conference with a magistrate judge, while Abnormal has proposed Early Neutral Evaluation ("ENE"). Given the parties' substantially divergent settlement positions, including their disagreement over coexistence and rebranding, Abnormal believes that an objective evaluation of the parties' respective claims and defenses through ENE would be more productive at this stage and could facilitate subsequent settlement discussions. Notwithstanding the foregoing, the parties agree that ADR is more likely to be productive after key discovery is complete and are amenable to deferring ADR consistent with the January 23, 2027 deadline proposed by the parties in the Scheduling below. The parties will be prepared to address their preferred ADR process and the timing of ADR at the case management conference.

**XIII. Other References**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XIV. Narrowing of Issues**

The parties do not believe the issues in this case can be narrowed at this time.

**XV. Scheduling**

The parties propose the following schedule:

| **Event** | **Deadline** |
|---|---|
| Last Day to Amend Pleadings | December 22, 2026 |
| Completion of Initial ADR Session | January 23, 2027 |
| Further Case Management Conference | April 15, 2027 |
| Fact Discovery Cutoff | May 7, 2027 |
| Expert Designations and Opening Expert Reports Due | May 19, 2027 |
| Rebuttal Expert Reports Due | June 23, 2027 |
| Expert Discovery Cutoff | July 14, 2027 |
| Plaintiff's Summary Judgment Opening Brief | July 23, 2027 |

| Event | Deadline |
|---|---|
| Defendant's Summary Judgment Opening / Opposition Brief | August 9, 2027 |
| Plaintiff's Summary Judgment Opposition / Reply Brief | August 26, 2027 |
| Defendant's Summary Judgment Reply Brief | September 2, 2027 |
| Last Day for Hearing on Dispositive Motions | September 16, 2027 |
| Final Pre-Trial Conference | November 1, 2027 |
| Trial | Starting November 16, 2027 |

**XVI. Trial**

Both parties have demanded a jury trial. The parties expect the length of trial to be five days.

**XVII. Disclosure of Non-party Interested Entities or Persons**

The parties state that other than the named parties herein and the parties identified in the parties' respective Certifications of Interested Entities or Persons required by Civil L.R. 3-15, there is no such interest to report. (ECF Nos. 10, 24.).

**XVIII. Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XIX. Other**

The parties have no other matters to report.

Dated: October 23, 2026

MORRISON & FOERSTER LLP

By: */s/ Joyce Liou*
Joyce Liou

Attorneys for Plaintiff
ANTHROPIC, PBC

Dated: October 23, 2026

IPLA, LLP

By: */s/ Phillip L. Kim*
Phillip L. Kim

Attorneys for Defendant
ABNORMAL AI, INC.

**ECF CERTIFICATION**

I, Joyce Liou, am the ECF User whose ID and password are being used to file the joint case management statement. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Phillip L. Kim has concurred in this filing.

Dated: October 23, 2026

/s/ *Joyce Liou*
Joyce Liou